IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 3:22-cr-104-001-REP |
| v. | ) | |
| | ) | |
| COREY BRANCH, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING POSITION

COMES NOW the United States of America, by its United States Attorney for the Eastern District of Virginia, Jessica D. Aber, and Assistant United States Attorney Angela Mastandrea-Miller, and files its Sentencing Position in the above-captioned matter, and in support thereof, offers the following:

## INTRODUCTION

**Procedural History:**

A one-count criminal Indictment was returned by a Richmond Grand Jury on July 19, 2022, charging the defendant, Corey Branch, with Escape from the Custody of the Attorney General of the United States in violation of Title 18, United States Code, Section 751(a) on or about June 18, 2022. On August 31, 2022, the defendant entered a plea of guilty before United States Magistrate Judge Mark Colombell. At the time of his plea, an agreed upon Statement of Facts was filed, however there is no plea agreement in this case. Sentencing has been scheduled for December 8, 2022, at 2:30 pm before this Honorable Court.

1

## Sentencing Position of the United States

The United States has no objections, corrections, or amendments to the Presentence Report (PSR). The United States agrees with the Advisory Guideline range calculations as set forth in the PSR. The probation officer has correctly determined that the defendant has an adjusted Offense Level of 4, and a Criminal History Category of V, resulting in a Guideline Range of 4 to 10 months. The statutory maximum sentence in this case is 5 years. The offense also calls for a three-year term of supervised release, and the imposition of a $100.00 mandatory special assessment.

Based on the factors set forth in 18 U.S.C. §3553(a), the United States respectfully recommends to this Court the imposition of a term of 10 months' incarceration, followed by three years of supervised release, with the sentence imposed in this case to run consecutive to the 160 month sentence the defendant is currently serving (his release date is noted on the Bureau of Prisons Website as February 2, 2028) that was imposed on September 26, 2017 (for possessing with the intent to distribute more than 700 grams of Fentanyl, and for possession of a firearm by a convicted felon). See PSR, p. 4, ¶ 2-4.

1.     The Recommended Sentence is Consistent with the Goals of 18 U.S.C. § 3553

When sentencing a defendant, a district court must consider the advisory guideline range and other relevant sentencing factors as outlined in 18 U.S.C. §3553(a). *See United States v. Hughes,* 401 F.3D 540 (4th Cir. 2005). These factors include the need for the sentence imposed:

(A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     to afford adequate deterrence to criminal conduct;

(C)     to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training; medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

The factors also include "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

A.   Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment

In this case, the defendant entered a plea of guilty to escaping from FCI Petersburg. The facts that led to the defendant's arrest on this charge are set forth in the Statement of Facts filed at the time of the defendant's plea and are set forth in the PSR.[1] The United States is recommending to this Court the imposition of a term of incarceration at the upper end of the advisory guidelines range, and pursuant to U.S.S.G. 5G1.3(a), and contrary to defendant's recommendation, because the defendant committed the instant offense while he was serving a term of imprisonment (for drug trafficking and for possessing a firearm in furtherance) the Sentencing Commission counsels that the "instant offense shall be imposed to run consecutive to the undischarged term of imprisonment." Based on the factors set forth in 18 U.S.C. § 3553(a), the United States believes that a sentence of 10 months, to run consecutive to the sentence the defendant is serving, is appropriate.

As noted, the crime that brings the defendant before this Court (Escape) was committed by the defendant while he was serving a significant (160 month) federal sentence for trafficking

_____

[1] The defendant suggests in his sentencing position that a concurrent sentence or in the alternative a variance sentence of "home confinement" is appropriate, however a concurrent sentence will not serve to deter the defendant or others, and a sentence of "home confinement" is not appropriate given that the defendant is currently incarcerated for a firearm and drug trafficking charge and will not be released prior to February 2, 2028.

fentanyl, and for possessing a firearm as a convicted felon (sentenced to serve a term of 120 months to run concurrent with the drug trafficking sentence).

The defendant was in escape status for three days, from just after midnight on June 18, 2022 until June 21, 2022 at 1:25 am, when he was keyed back into the facility. In other words, he was in escape status for *three days.* When he realized in the early morning hours on Saturday, June 18, 2022 that an impromptu head count was being conducted (the escapees saw that the lights were on at the facility), rather than turn himself in, the defendant turned around, left the area, and did not return until Tuesday, June 21, 2022.

Absent a sentence at the upper end of the guideline range, with that sentence to run consecutive to the sentence he is currently serving, this defendant (and others who may be contemplating similar conduct) will not grasp the seriousness of the offense. Nor will a sentence that is less than 10 months serve to promote respect for the law, provide adequate deterrence, protect the public, or provide just punishment.

<u>Prior Convictions</u>

The defendant, who is now 41 years old, comes before this Court with a juvenile record that began when he was 14 years old, and an adult criminal record that began when he was 19 years old. See PSR at pp. 6-13.

His adult convictions include: a conviction for Malicious Wounding at age 19 (3 points assessed), and a conviction for the use of a firearm in the commission of a felony (for these crimes, his probation was subsequently revoked); a conviction for driving with no operator's license at age 19 (no points assessed); three convictions for driving on revoked/suspended license at age 23 (no points assessed); a conviction for being a Felon in Possession of a Firearm (a federal charge) at age 24 (3 points assessed); and a conviction for possession with the intent to

distribute Fentanyl (727 grams) and possession of a firearm by a convicted felon (defendant possessed a loaded Beretta 40 caliber handgun) at age 35 (3 points assessed).

He therefore comes before this Court with three prior federal convictions for drug trafficking, and possession of firearms as a convicted felon (x2), and now, escape. While his driving charges were assessed no criminal history points, and certainly are not the most serious offenses, they do show a complete disregard for the law and for orders of the Court. The fact that he has a prior revocation and committed this crime while serving a 160-month sentence for firearm and drug trafficking convictions is quite concerning. The defendant committed the instant offense while he was under a criminal justice sentence for his federal conviction in the Eastern District of Virginia. And the charge that brings the defendant before this Court is also serious. The Bureau of Prisons trusted the defendant to abide by their rules when they allowed him to serve his sentence at a minimum-security satellite camp. His escape from the facility demonstrates a significant breach of the trust that had been placed in him and suggests that he may behave in a similar fashion (i.e. breach the Court's trust) when he is placed on federal supervision. Due to the publicity this case received, the community was well-aware that the defendant and three other inmates had escaped, and they were justifiably on edge until all four men were back in custody.

B. <u>Need to Provide Adequate Deterrence and Promote Respect for the Law</u>

An important consideration when fashioning a sentence, particularly in this case, is the need to provide adequate deterrence – both general and specific. With regard to general deterrence, there are other inmates located at Petersburg FCI as well as other federal correctional institutions, who are going to learn of the sentence this Court imposes in this case. That is, whatever sentence this Court imposes, others who are in a similar position that the defendant was

in at the time of his escape will weigh whether the risk (an additional prison term) is worth the reward (freedom for however long that lasts). Further, with regard to specific deterrence, the sentence imposed in this case must be one that serves to deter the defendant from engaging in similar criminal conduct in the future. It must also serve to promote respect for the law. For the defendant to suggest to this Court that a term of home confinement or a concurrent sentence is appropriate or will serve to deter the defendant or anyone at all is ludicrous. Absent the imposition by this Court of a consecutive sentence that falls at the upper end of the advisory guideline range, it is hard to imagine that this defendant will be deterred if he is ever faced with a similar opportunity to escape, however that is accomplished. A guideline sentence, to run consecutive to the sentence he is currently serving, may also serve to promote respect for the law, something his record clearly indicates is abysmally lacking.

C.  Need to Protect the Public

The criminal activity that the defendant engaged in is serious. He escaped from the custody of the Bureau of Prisons while serving a 160-month sentence for drug trafficking and for possessing a firearm as a convicted felon. This latter charge was the second time he was convicted in federal court of illegal firearms possession, and he has a prior conviction for malicious wounding and for the use of a firearm in the commission of a felony. These convictions point to the need for a sentence that will serve to protect the public. BRANCH had six years left to serve on his federal sentence when he escaped. As noted, the escape by this defendant and the other three inmates received a significant amount of publicity both in the Commonwealth of Virginia and throughout the United States. The citizens of Petersburg and the Tri-Cities were understandably on edge until the defendant and the other inmates were back in

custody. The United States believes that a sentence of ten months' incarceration, to run consecutive to the sentence the defendant is currently serving will serve to protect the public.

      D.  <u>Need to Provide Treatment and Educational/Vocational Training</u>

The PSR indicates that the defendant participated in a drug treatment program while incarcerated. He will also likely benefit from continued educational and vocational training while incarcerated so that he will be able to find employment and be a productive member of society upon his release from custody.

      E.  <u>Need to Avoid Unwarranted Disparities</u>

The defendant has been rewarded under the United States Sentencing Guidelines for returning to the prison, but he was gone for 3 days (72 hours). A term of incarceration at the upper end of the advisory guideline range to account for his having escaped, while certainly a light sentence, is appropriate based on the factors set forth in §3553(a).  In other words, while it is the position of the United States that an upward variance is easily justified in order to provide a level of meaningful general and specific deterrence, such a motion, even if granted, is not likely to have an impact on whether this defendant is in fact deterred. A sentence at the upper end of the advisory guideline range, in this case, ten months, to run consecutive to the sentence the defendant is currently serving, will ensure that there is no unwarranted disparity between the sentence imposed in this case, and that of other similarly situated defendants.

CONCLUSION

Based on the foregoing, the United States respectfully recommends to this Court the imposition of a sentence at the upper end of the advisory guideline range, specifically, ten months' incarceration, to run consecutive to the sentence the defendant is currently serving in 2:16cr165-001 (a consecutive sentence, as previously noted, is one that is recommended by the United States Sentencing Commission, See U.S.S.G. § 5G1.3(a)). The United States hopes that such a sentence will provide adequate general and specific deterrence, serve to promote respect for the law, protect the public, and avoid unwarranted sentencing disparities. The United States also asks that the term of incarceration imposed by this Court be followed by a term of three years of Supervised Release and that the mandatory $100.00 special assessment be imposed.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:      _____/s/_____
Angela Mastandrea-Miller
Assistant United States Attorney
VSB 51070
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219-2447
Telephone-804-819-5400
Email:  *Angela.Miller3@usdoj.gov*